# United States District Court

## FOR THE
### NORTHERN DISTRICT OF CALIFORNIA

## VENUE: SAN FRANCISCO

| |
|---|
| **FILED** |
| Sep 28 2022 |
| Mark B. Busby |
| CLERK, U.S. DISTRICT COURT |
| NORTHERN DISTRICT OF CALIFORNIA |
| SAN FRANCISCO |

UNITED STATES OF AMERICA,

V.

SANTOS RENE SOTO and
SANTOS MOISES SOTO III a/k/a "SAINTS SOTO

DEFENDANT(S).

# INDICTMENT

18 U.S.C. § 371 – Conspiracy;
18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud;
18 U.S.C. § 1343 – Wire Fraud;
18 U.S.C. § 1344(2) – Bank Fraud;
18 U.S.C. § 1014 – False Statement on a Loan Application;
18 U.S.C. §§ 981(a)(1)(C), 982, & 28 U.S.C. § 2461(c) – Criminal Forfeiture

A true bill.

/s/ Foreperson of the Grand Jury

Foreman

Filed in open court this 28th day of

September, 2022.

Brittany Sims,          Clerk

Laurel Beeler,
United States Magistrate Judge          Bail, $ Warrants

1   STEPHANIE M. HINDS (CABN 154284)
    United States Attorney

2

**FILED**

Sep 28 2022

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11   UNITED STATES OF AMERICA,              )   CASE NO. 3:22-cr-00378 WHO
                                            )
12          Plaintiff,                      )   VIOLATIONS:
                                            )   18 U.S.C. § 371 – Conspiracy;
13      v.                                  )   18 U.S.C. § 1349 – Conspiracy to Commit Wire
                                            )   Fraud;
14   SANTOS RENE SOTO and                   )   18 U.S.C. § 1343 – Wire Fraud;
     SANTOS MOISES SOTO III a/k/a "SAINTS   )   18 U.S.C. § 1344(2) – Bank Fraud;
15   SOTO",                                 )   18 U.S.C. § 1014 – False Statement on a Loan
                                            )   Application; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C.
16          Defendants.                     )   § 2461(c); 18 U.S.C. § 982(a)(2) – Forfeiture
                                            )   Allegation
17                                          )
                                            )   SAN FRANCISCO VENUE
18   _____

19                         I N D I C T M E N T

20   The Grand Jury charges:

21                       Introductory Allegations

22          At all times relevant to this Indictment:

23   Defendants

24          1.      SANTOS MOISES SOTO III a/k/a SAINTS SOTO was a resident of San Francisco,

25   California and was the CEO of GoldenSpear LLC ("GoldenSpear"), an artificial intelligence ("AI")

26   technology company founded in approximately 2009 and purportedly based in San Francisco and

27   Barcelona, Spain.

28

INDICTMENT

2.      SANTOS RENE SOTO was a resident of San Francisco, California and is the father of SAINTS SOTO.  SANTOS SOTO is on the board of directors for GoldenSpear.

3.      In addition to GoldenSpear, SAINTS SOTO is also the CEO of AI Health, a subsidiary of GoldenSpear that purports to be an AI technology company focused on healthcare and founded in approximately 2021.  SANTOS SOTO is also involved in raising funds from investors for AI Health.

4.      SAINTS SOTO and SANTOS SOTO had joint ownership of and control over, and were signatories for, a bank account ending 5218 belonging to GoldenSpear, held at a bank with offices in the United States insured by the Federal Deposit Insurance Corporation ("Bank 1").

5.      SAINTS SOTO and SANTOS SOTO had joint ownership of and control over, and were signatories for, a bank account ending 4781 belonging to AI Health, held at a second bank with offices in the United States insured by the Federal Deposit Insurance Corporation ("Bank 2").

The Small Business Administration

6.      The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

The Paycheck Protection Program

7.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

8.      In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business.  The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make

certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.  In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.  The applicant for a PPP loan must state that the United States is the principal place of residence for all employees of the applicant included in the payroll calculation on the application.

9.      Among the types of businesses eligible for a PPP loan were individuals who operated under a "sole proprietorship" business structure.  In order to be eligible to receive such a PPP loan, individuals had to report and document their income and expenses from the sole proprietorship, as typically reported to the Internal Revenue Service ("IRS") on Form 1040, Schedule C, for a given tax year.  The lending institution or loan processor used this information and documents to calculate the amount of money the individual was entitled to receive under the PPP.

10.     A PPP loan application was required to be processed by a participating lender.  If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

11.     PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities.  The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

Relevant PPP Lenders and Affiliated Companies

12.     Lender 1 was a federally insured financial institution based in New York, NY.  Lender 1 was an SBA Preferred Lender and participated as an SBA-approved PPP lender to small businesses.

**The Scheme to Defraud**

The GoldenSpear Fraud

13.     Beginning in or around 2017 and continuing until at least in or around March 2020, SAINTS SOTO and SANTOS SOTO carried out a scheme to defraud individuals.  Specifically, they told investors and potential investors that GoldenSpear was an AI company with a focus on fashion and retail.  They claimed that GoldenSpear had developed an "A.I. Fashion Assistant" that used "visual and textual algorithms" to help retailers identify specific fashion brands and types of clothing that potential customers might want to purchase.

14.     As part of the scheme, SAINTS SOTO falsely represented to investors that GoldenSpear had already entered into contracts with, had discussed investments from or acquisitions by, or was otherwise working with numerous established entities.  These representations induced potential investors to invest money in GoldenSpear.

15.     In connection with the scheme to defraud, SAINTS SOTO began communicating with investor T.G. about potentially investing in GoldenSpear in or around March 2017.  On or about January 17, 2018, SAINTS SOTO represented to T.G. that GoldenSpear was "selected" by a prominent car manufacturer ("Car Manufacturer 1") to "power a global intelligent Dealership Network."  SAINTS SOTO wrote that "[t]he magnitude of this project is remarkable" and that Car Manufacturer 1 has "accepted a per dealership subscription model" and that "financial terms are still being worked out."  In fact, Car Manufacturer 1 never entered into an agreement with GoldenSpear and never selected GoldenSpear to do any type of work for the company.

16.     On or about January 17, 2018, SAINTS SOTO also represented to T.G. that a prominent financial firm ("Financial Firm 1") had taken GoldenSpear on a "roadshow" in 2017 to meet with numerous prominent technology companies.  SAINTS SOTO stated to T.G. that due to the "roadshow," many of the technology companies "made known their interest to make an acquisition and/or an investment" in GoldenSpear.  In fact, Financial Firm 1 did not take GoldenSpear on a roadshow, and Financial Firm 1 was not aware of offers by prominent technology companies to acquire or invest in GoldenSpear.

17.     Due in part to representations that GoldenSpear had been "selected" by Car Manufacturer

INDICTMENT                                      4

1 to "power a global intelligent Dealership Network" and that prominent technology companies had

2 "made known their interest to make an acquisition and/or investment," T.G., who had previously

3 invested in GoldenSpear, made a further investment in GoldenSpear.  On or around February 9, 2018,

4 T.G. invested $50,000 in GoldenSpear.  Following this investment, T.G. continued to invest, and

5 between February 2018 and May 2019, T.G. invested approximately $300,000 in GoldenSpear.  In total,

6 beginning in approximately 2017, GoldenSpear raised more than $12 million from multiple investors.

7 The AI Health Fraud

8       18.     Beginning in or around 2020, after the onset of the COVID-19 pandemic, SAINTS

9 SOTO and SANTOS SOTO began to represent to potential investors that GoldenSpear was moving

10 from the fashion sector to the health sector.  They created a new company, "AI Health," that purportedly

11 used artificial intelligence to solve health-related problems.  SANTOS SOTO and SAINTS SOTO

12 represented to investors and potential investors that AI Health had created a wearable device that, using

13 artificial intelligence, could detect the presence of the COVID-19 virus in the wearer of the device.

14       19.     As part of the scheme to defraud, in or around March 2021, SAINTS SOTO sent investor

15 J.B. a slide presentation titled "AI Health: Platform Overview."  The presentation represented that AI

16 Health had "gifted" its "Platform," which included a "Biometric Screening Wearable Powered by AI,"

17 to a high school in the Los Angeles, California area ("High School 1").  The presentation described a

18 "Kids Health Monitor Wearable for COVID-19 Symptom Screening" and an "Alternative Pin Wearable

19 Option for On Site Use."  The wearable devices were described, among other things, as being "Reusable

20 and Waterproof"; requiring a "Simple Placement on Chest" to wear; and being "Bluetooth Enabled for

21 Instant Contact Tracing Between Wearables."  In fact, High School 1 never received a wearable device

22 developed or manufactured by GoldenSpear or AI Health.

23       20.     In or around March 2021, SAINTS SOTO also represented to J.B. that a prominent

24 accounting and valuation firm ("Accounting Firm 1") had conducted a valuation of AI Health and that

25 Accounting Firm 1 had valued the company at more than $100 million.  Separately, SAINTS SOTO

26 represented that AI Health had partnered with a children's hospital in the Los Angeles, California area

27 ("Hospital 1") and that AI Health had collected large amounts of health data from the hospital that it

28 would use to conduct a study related to the COVID-19 pandemic.  Both representations were false.

INDICTMENT               5

21.     Due in part to SAINTS SOTO's multiple representations about AI Health, including that AI Health had developed a wearable device that could detect the presence of COVID-19, that students and staff in High School 1 were using the wearable devices and that they were functioning properly, that AI Health was conducting a study using data from Hospital 1, and that Accounting Firm 1 valued the company at more than $100 million, J.B. decided to invest in AI Health.  On or about May 17, 2021, J.B. invested $250,000 in AI Health.

22.     In or around March 2021, SANTOS SOTO sent investor E.C. a slide presentation titled "GoldenSpear: AI Health Platform Overview, Initiative to Open Schools."  This presentation contained many of the same false representations as the presentation sent to J.B, including the representation that GoldenSpear had "gifted" its "AI Health Platform," which included a "Biometric Screening Wearable Powered by AI," to High School 1.  The presentation stated that AI Health had developed a "Bluetooth Pin wearable for instant contact tracing" and a "AI Biometric Screening wearable for key COVID-19 symptoms."  The wearable devices were described as being "Reusable and Waterproof"; requiring a "Simple Placement on Chest" to wear; and being "Bluetooth Enabled for Instant Contact Tracing Between Wearables."

23.     SANTOS SOTO also represented to E.C. that AI Health had entered into a contract with a prominent medical device company ("Medical Device Company 1") under which Medical Device Company 1 would provide assistance and medical devices to AI Health for a study related to the identification of and prevention of diabetes in Guam.  On or about January 6, 2022, SANTOS SOTO emailed E.C. attaching a contract that he described as the "Approval" received from Medical Device Company 1.  The contract attached to the email provided that Medical Device Company 1 would provide numerous medical devices to AI Health for free.  In fact, there was no finalized agreement between Medical Device Company 1 and AI Health, and no contract signed by both parties.

24.     SANTOS SOTO also represented to E.C. that in or around late 2021, AI Health was working with Accounting Firm 1, and that Accounting Firm 1 was demanding payment for services rendered from AI Health.  SANTOS SOTO used this representation to induce E.C. to continue investing with AI Health in part to allow AI Health to make payment to Accounting Firm 1.  In fact, Accounting

Firm 1 was not doing any work for AI Health in 2021 and never billed AI Health for any work done in 2021.

25.     Due in part to SANTOS SOTO's representations that AI Health had developed a wearable device that could detect the presence of COVID-19, and that students and staff in High School 1 were using the wearable devices and that they were functioning properly, E.C. invested in AI Health. Between July 2021 and April 2022, E.C. in his individual capacity or entities connected to and controlled by E.C. invested approximately $2.67 million in AI Health.

26.     Having devised and intending to devise this scheme and artifice to defraud, and to obtain money and property from investors by means of false and fraudulent pretenses, representations, and promises, SAINTS SOTO and SANTOS SOTO transmitted and caused to be transmitted, by means of wire and interstate and foreign commerce, writings and other signs, signals, pictures, and sounds, for the purpose of executing the scheme and artifice to defraud as further alleged herein.  These wire transmissions include wire transfers of funds between U.S. banks using the FedWire money transmission service.

The PPP Loan Fraud

27.     On April 20, 2020, a loan application for PPP funds was submitted on behalf of GoldenSpear LLC to Lender 1.

28.     The loan application lists the person submitting the application as "Santos Soto."  The email address provided in the loan application belonged to SANTOS SOTO, and the social security number and birthdate provided in the loan application belonged to SAINTS SOTO.

29.     In the loan application, SAINTS SOTO and SANTOS SOTO provided Lender 1 with the following the information:

   a.  The monthly payroll for GoldenSpear LLC was $267,899.16, which based on the SBA PPP loan calculation made GoldenSpear eligible for a $669,700 loan;

   b.  GoldenSpear had 33 current employees located in the United States;

   c.  GoldenSpear rented office space at a cost of approximately $18,000 per month;

d.  SAINTS SOTO and SANTOS SOTO checked "Yes" when the application asked: "Is the United States the principal place of residence for all employees of the Applicant included in the Applicant's payroll calculation above [$267,899.16]";

e.  SAINTS SOTO and SANTOS SOTO initialed the following certification: "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law".

30.  On or about May 5, 2020, based on the representations made by SAINTS SOTO and SANTOS SOTO in the application, Lender 1 approved the PPP loan and wired $669,700 into the GoldenSpear bank account at Bank 1 ending 5218.  The two signatories for this account at Bank 1 were SAINTS SOTO and SANTOS SOTO.

31.  Multiple representations made by SAINTS SOTO and SANTOS SOTO in the loan application were materially false and intended to defraud Lender 1.

32.  Automatic Data Processing (ADP) records from 2019 and 2020 indicate that GoldenSpear had seven or eight U.S.-based employees in those years, and that the average payroll costs for those United States-based employees was approximately $57,000 to $67,000 a month, not $267,899.16, as stated in the loan application.  As stated above, applicants for PPP loans had to represent that any funds allocated were to be used to pay for United States-based employees only.

33.  SAINTS SOTO and SANTOS SOTO also stated in the loan application that the PPP loan would be used to pay an $18,000 per month commercial lease.  The address provided by SAINTS SOTO and SANTOS SOTO in the loan application as the location of their commercial lease was the address of SANTOS SOTO's home, a residential property located in San Francisco.

COUNT ONE:        (18 U.S.C. § 371 – Conspiracy)

34.  Paragraphs 1 through 33 of this Indictment are re-alleged and incorporated as if fully set forth here.

35.  Beginning no later than in or about March 2017, and continuing until at least in or about May 2022, in the Northern District of California and elsewhere, the defendants,

INDICTMENT                    8

1                              SANTOS RENE SOTO and,

2                 SANTOS MOISES SOTO III a/k/a "SAINTS SOTO,"

3  did knowingly conspire to commit offenses against the United States, namely devising and intending to

4  devise a scheme and artifice to defraud as to a material matter and to obtain money and property by

5  means of materially false and fraudulent pretenses, representations, and promises, and by concealment

6  of material facts, and, for the purpose of executing such scheme and artifice and attempting to do so, did

7  transmit and cause to be transmitted, by means of wire communication in interstate and foreign

8  commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States

9  Code, Section 1343.

10          36.    The objectives of the conspiracy were, among other things, (a) to obtain investment funds

11  in GoldenSpear and AI Health from investors using false and misleading statements, and omissions of

12  material facts; (b) to obtain funds from a PPP loan to Lender 1 using false and misleading statements,

13  and omissions of material facts.

14          37.    In furtherance of the conspiracy and to effect the objects thereof, in the Northern District

15  of California and elsewhere, SANTOS SOTO and SAINTS SOTO, and others committed the following

16  overt acts:

17          a.      On or about January 17, 2018, SAINTS SOTO wrote an email to T.G. that contained

18                    false and misleading statements, including falsely stating that GoldenSpear had been

19                    "selected" by Car Manufacturer 1 to "power a global intelligent Dealership Network" and

20                    falsely stating that Financial Firm 1 had taken GoldenSpear on a "roadshow" to meet

21                    prominent technology companies in 2017 and that many of the technology companies

22                    "made known their interest to make an acquisition and/or an investment."

23          b.      On or about April 20, 2020, SANTOS SOTO and SAINTS SOTO submitted a PPP loan

24                    application to Lender 1 that included false statements including, but not limited to, the

25                    number of GoldenSpear employees based in the United States, how much GoldenSpear

26                    paid its United States-based employees, and GoldenSpear's commercial office space

27                    expenditures.

28          c.      On or about January 6, 2022, SANTOS SOTO wrote an email to E.C. that contained false

1   and misleading statements, including providing a contract purporting to be a finalized

2   agreement between Medical Device Company 1 and AI Health that was not.

3   <u>COUNT TWO</u>:        (18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud)

4       38.   Paragraphs 1 through 37 of this Indictment are re-alleged and incorporated as if fully set

5   forth here.

6       39.   Beginning no later than in or about March 2017 and continuing through in or about May

7   2022, in the Northern District of California and elsewhere, the defendants,

8                       SANTOS RENE SOTO and
                  SANTOS MOISES SOTO III a/k/a/ "SAINTS SOTO",
9

10  and others, did knowingly conspire to devise and intend to devise a scheme and artifice to defraud as to

11  a material matter and to obtain money and property by means of materially false and fraudulent

12  pretenses, representations, and promises, and by omission and concealment of material facts, and, for the

13  purpose of executing such scheme or artifice and attempting to do so, did transmit, and cause to be

14  transmitted, by means of wire communication in interstate and foreign commerce, certain writings,

15  signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

16      All in violation of Title 18, United States Code, Section 1349.

17  <u>COUNT THREE</u>:        (18 U.S.C. § 1343 – Wire Fraud)

18      40.   Paragraphs 1 through 39 of this Indictment are re-alleged and incorporated as if fully set

19  forth here.

20      41.   Beginning in or about March 2017 and continuing through in or about May 2019, in the

21  Northern District of California and elsewhere, the defendant,

22                  SANTOS MOISES SOTO III a/k/a/ "SAINTS SOTO,"

23  knowingly and with the intent to defraud participated in, devised, and intended to devise a scheme and

24  artifice to defraud as to a material matter, and to obtain money and property by means of materially false

25  and fraudulent pretenses, representations, and promises, and by means of omission and concealment of

26  material facts, and, for the purpose of executing such scheme and artifice to defraud and attempting to

27  do so, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means

28  of a wire communication, certain writings, signs, signals, pictures, and sounds, specifically a wire

1  transfer of $50,000 sent on February 9, 2018 by T.G. to a bank account ending 5218 belonging to

2  GoldenSpear.

3      All in violation of Title 18, United States Code, Section 1343.

4  COUNT FOUR:      (18 U.S.C. § 1343 – Wire Fraud)

5      42.    Paragraphs 1 through 41 of this Indictment are re-alleged and incorporated as if fully set

6  forth here.

7      43.    Beginning in or about March 2021 and continuing through in or about May 2021, in the

8  Northern District of California and elsewhere, the defendant,

9                      SANTOS MOISES SOTO III a/k/a/ "SAINTS SOTO,"

10  knowingly and with the intent to defraud participated in, devised, and intended to devise a scheme and

11  artifice to defraud as to a material matter, and to obtain money and property by means of materially false

12  and fraudulent pretenses, representations, and promises, and by means of omission and concealment of

13  material facts, and, for the purpose of executing such scheme and artifice to defraud and attempting to

14  do so, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means

15  of a wire communication, certain writings, signs, signals, pictures, and sounds, specifically a wire

16  transfer of $250,000 sent by J.B. on or about May 17, 2021 to a bank account ending in 4781 belonging

17  to AI Health.

18      All in violation of Title 18, United States Code, Section 1343.

19  COUNT FIVE:      (18 U.S.C. § 1343 – Wire Fraud)

20      44.    Paragraphs 1 through 43 of this Indictment are re-alleged and incorporated as if fully set

21  forth here.

22      45.    Beginning in or about March 2021 and continuing through in or about April 2022, in the

23  Northern District of California and elsewhere, the defendant,

24                      SANTOS RENE SOTO,

25  knowingly and with the intent to defraud participated in, devised, and intended to devise a scheme and

26  artifice to defraud as to a material matter, and to obtain money and property by means of materially false

27  and fraudulent pretenses, representations, and promises, and by means of omission and concealment of

28  material facts, and, for the purpose of executing such scheme and artifice to defraud and attempting to

do so, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of a wire communication, certain writings, signs, signals, pictures, and sounds, specifically a wire transfer of $234,000 sent on or about September 20, 2021 by an entity belonging to and controlled by E.C., to a bank account ending 4781 belonging to AI Health.

All in violation of Title 18, United States Code, Section 1343.

COUNT SIX:  (18 U.S.C. § 1344(2) – Bank Fraud)

46.     Paragraphs 1 through 45 of this Indictment are re-alleged and incorporated as if fully set forth here.

Beginning in or about April 2020, and continuing through in or about May, 2020, in the Northern District of California and elsewhere, the defendants,

SANTOS RENE SOTO and
SANTOS MOISES SOTO III a/k/a/ "SAINTS SOTO",

knowingly and with the intent to defraud executed, attempted to execute, and participated in a scheme or artifice to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody or control of, Lender 1, the deposits of which were each then insured by the FDIC, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, certain moneys, funds, credits, assets, securities, and other property owned by or under the custody and control of Lender 1.

Execution of the Scheme

47.     On or about April 20, 2020, in the Northern District of California and elsewhere, SOTO and SAINTS did knowingly execute the above-described scheme to defraud by making false representations and certifications to Lender 1 regarding the number of United States-based people employed by GoldenSpear and the average monthly payroll for United-States-based employees of GoldenSpear, as well as the cost of rent for office space for GoldenSpear.

All in violation of 18 U.S.C. § 1344(2).

COUNT SEVEN:     (18 U.S.C. § 1014 – False Statement on a Loan Application)

48.     Paragraphs 1 through 47 of this Indictment are re-alleged and incorporated as if fully set forth here.

49.     On or about April 20, 2020, in the Northern District of California and elsewhere, the defendants,

SANTOS RENE SOTO and
SANTOS MOISES SOTO III a/k/a/ "SAINTS SOTO",

knowingly made, and willfully caused to be made, false statements for the purpose of influencing a financial institution the deposits of which were then federally insured, namely Lender 1, in an attempt to obtain a PPP loan from Lender 1, to wit, submitting a PPP loan application to Lender 1 stating that GoldenSpear had 33 employees based in the United States, when in fact GoldenSpear has far fewer employees based in the United States, and that GoldenSpear paid approximately $18,000 in commercial rent when in fact the address listed on the PPP loan application for the GoldenSpear office was the residential home of defendant SANTOS SOTO.

All in violation of 18 U.S.C. § 1014.

FORFEITURE ALLEGATION:       (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); 18 U.S.C. § 982(a)(2))

50.     The allegations contained in this Indictment are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(a)(2).

Upon conviction for the offense set forth in Count One this Indictment, the defendants,

SANTOS RENE SOTO and
SANTOS MOISES SOTO III a/k/a/ "SAINTS SOTO",

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real or personal, constituting, or derived from proceeds the defendant obtained directly and indirectly, as the result of those violations, including but not limited to a money judgment.

Upon conviction for the offenses set forth in Counts Two, Three, and Four of this Indictment, the defendant,

SANTOS MOISES SOTO III a/k/a/ "SAINTS SOTO",

INDICTMENT                         13

1   shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and

2   Title 28, United States Code, Section 2461(c), all property, real or personal, constituting, or derived

3   from proceeds the defendants obtained directly and indirectly, as the result of those violations, including

4   but not limited to a money judgment.

5      Upon conviction for the offense set forth in Counts Two and Five of this Indictment, the

6   defendant,

7                              SANTOS RENE SOTO,

8   shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and

9   Title 28, United States Code, Section 2461(c), all property, real or personal, constituting, or derived

10  from proceeds the defendants obtained directly and indirectly, as the result of those violations, including

11  but not limited to a money judgment..

12     Upon conviction for the offense set forth in Count Six of this Indictment, the defendants,

13                           SANTOS RENE SOTO and
                   SANTOS MOISES SOTO III a/k/a/ "SAINTS SOTO",
14
15  shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), Section

16  2461(c), all property, real or personal, constituting, or derived from proceeds the defendants obtained

    directly and indirectly, as the result of that violation, including but not limited to a money judgment in
17
    the amount of $669,700.00.
18
19     Upon conviction for the offense set forth in Count Seven of this Indictment, the defendants,

20                           SANTOS RENE SOTO and
                   SANTOS MOISES SOTO III a/k/a/ "SAINTS SOTO",

21  shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and

22  Title 28, United States Code, Section 2461(c), all property, real or personal, constituting, or derived

23  from proceeds the defendants obtained directly and indirectly, as the result of those violations, including

24  but not limited to a money judgment in the amount of $669,700.00.

25     If any of the property described above, as a result of any act or omission of the defendant:

26         a.    cannot be located upon exercise of due diligence;

27         b.    has been transferred or sold to, or deposited with, a third party;

28         c.    has been placed beyond the jurisdiction of the court;

INDICTMENT                    14

1           d.     has been substantially diminished in value; or

2           e.     has been commingled with other property which cannot be divided without

3                 difficulty,

4 the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21,

5 United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

6       All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States

7 Code, Section 2461(c); Title 18, United States Code, Section 982(a)(2); and Federal Rule of Criminal

8 Procedure 32.2.

9

10 DATED:  September 28, 2022                       A TRUE BILL.

11

12                                     _____/s/_____

13                                   FOREPERSON

14 STEPHANIE M. HINDS
United States Attorney

15

16 _____/s/_____

17 ROSS WEINGARTEN
ALETHEA SARGENT

18 Assistant United States Attorneys

19

20

21

22

23

24

25

26

27

28

INDICTMENT               15